IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLANNING AND CONSERVATION LEAGUE, | No. C 05-3527 CW |
| Plaintiff, | ORDER GRANTING, IN PART, PROPOSED INTERVENORS' MOTION TO INTERVENE |
| v. | |
| UNITED STATES BUREAU OF RECLAMATION, | |
| Defendant. | |
| SAN LUIS & DELTA-MENDOTA WATER AUTHORITY; and WESTLANDS WATER DISTRICT, | |
| Proposed Intervenors. | |

Pursuant to Federal Rule of Civil Procedure 24, Applicants San Luis & Delta-Mendota Water Authority (the Authority) and Westlands Water District (Westlands) move to intervene as defendants in this

action.  Collectively, the Authority and Westlands are referred to as Proposed Intervenors.  Plaintiff Planning and Conversation League (PCL) opposes this motion.  Defendant United States Bureau of Reclamation (the Bureau) opposes this motion in part.  The matter was heard on November 18, 2005.  Having considered all of the papers filed by the parties and oral argument, the Court GRANTS, in part, Proposed Intervenors' motion.

BACKGROUND

I.   Underlying Action

In this action, PCL challenges an environmental review of a proposed 500-foot long pipeline and related pumps, which would connect the main delivery canals of two water diversion projects -- the federal Central Valley Project (CVP) and California's State Water Project (SWP) -- in California's Central Valley.  These diversion projects draw their water from the estuary formed by the discharge of the Sacramento and San Joaquin River systems into the San Francisco Bay (Bay-Delta).  The Bay-Delta is the largest estuary on the west coast of the Americas.  Millions of Californians depend on the Bay-Delta as a source of drinking water.  According to PCL, the Bay-Delta is also one of California's most threatened ecosystems and a primary cause of the environmental problems is the network of diversion pumps.

The proposed pipeline at issue is known as the Delta-Mendota Canal/California Aqueduct Intertie (Intertie Project).  The primary purpose of the Intertie Project is to restore CVP capacity that has been lost due to problems with the operation of the Delta-Mendota Canal.  The Project will allow 400 cubic feet per second of water

2

to be pumped from the Delta-Mendota Canal into the California Aqueduct and, from there, the water will be moved southward and redistributed to CVP contractors.

In September, 2004, the Bureau and the Authority completed a joint environmental review of the Intertie Project titled "Delta-Mendota Canal/California Aqueduct Intertie Proposed Finding of No Significant Impact/Negative Declaration and Draft Environmental Assessment/Initial Study" (Intertie EA/IS). The Authority's staff reviewed and made comments on all drafts and the final version of materials incorporated into the review.

The Intertie EA/IS was released for public comment in November, 2004. The Authority participated in the joint circulation of the review and in preparing responses to comments, which were incorporated into the final document. PCL and others submitted comments on this study. PCL commented that, because increased pumping associated with the Intertie Project could have significant environmental effects on the Bay-Delta, a full Environmental Impact Statement (EIS) should be prepared as required by the National Environmental Policy Act (NEPA). The Bureau did not prepare an EIS.

On April 21, 2005, the Authority filed a negative declaration finding that the California Environmental Quality Act (CEQA) did not require an Environmental Impact Report (EIR) for the Intertie Project. PCL did not seek judicial review of the Authority's CEQA compliance. On May 24, 2005, the Bureau approved a finding that the Intertie Project would have no significant environmental effects and that the Bureau had fulfilled its NEPA obligations.

3

Since completing the Intertie EA/IS, the Authority and the Bureau have moved forward with the Intertie Project. (Frances Mizuno Dec. ¶ 18). The Project's design is complete. On September 28, 2005, the Bureau awarded the supply contract for the purchase of pumps, gates and valves. A solicitation for the prime construction contract has been issued; bids were due on October 14, 2005 and an award was expected on November 18, 2005. The Authority and its member agencies have committed to fund $25 million of the Intertie Project's total budget of $27.5 million. (Id. at ¶ 15). If project costs escalate due to delay, the Authority's members will be faced with a choice of agreeing to fund cost overruns or abandoning the project and losing the investment and potential water supply benefits. (Id. at ¶ 17).

On August 31, 2005, PCL filed the instant action against the Bureau, seeking to enjoin the Intertie Project until the Bureau complies with the NEPA by preparing an EIS.

II. Applicants for Intervention

Proposed Intervenors seek to intervene as defendants in the action as of right under Federal Rule of Civil Procedure 24(a)(2), or, in the alternative, permissively under Federal Rule of Civil Procedure 24(b)(2).

The Authority has thirty-two member water agencies that contract with the United States for water stored, pumped and conveyed by the CVP. Among other purposes, the Authority was formed to preserve and protect the rights and benefits of the member agencies in their contracts. The Authority develops and disseminates information to legislative and administrative bodies;

4

1  exercises common powers of its members to participate in
2  administrative and judicial proceedings; and is authorized to
3  commence and maintain lawsuits on behalf of its member agencies.
4  The Authority also operates and maintains certain CVP facilities
5  under a contract with the Bureau.
6      Westlands is a member agency of the Authority.  It is a
7  California water district formed pursuant to California Water Code
8  sections 34000 et seq., authorized to intervene in any proceeding
9  involving or affecting the ownership or use of water within its
10 district.  Westlands holds vested contractual water rights to
11 receive water from the Bureau through the San Luis Unit of the CVP
12 for distribution and irrigation of lands within areas of Fresno and
13 Kings Counties.  Westlands also holds vested contractual rights to
14 receive additional waters from the CVP under the Stipulated
15 Judgment entered on December 30, 1986 in the consolidated cases of
16 Barcellos and Wolfsen, Inc., et al. v. Westlands Water District and
17 Westlands Water District v. United States of America, Nos. CV 79-
18 106 OWW and CV F-89-245 OWW (E.D. Cal.).  Westlands encompasses
19 approximately 600,000 acres including productive agricultural
20 lands.

## LEGAL STANDARD

22     To intervene as a matter of right under Federal Rule of Civil
23 Procedure 24(a)(2), "an applicant must claim an interest the
24 protection of which may, as a practical matter, be impaired or
25 impeded if the lawsuit proceeds without" the applicant. Forest
26 Conservation Council v. United States Forest Serv., 66 F.3d 1489,
27 1493 (9th Cir. 1995).  The Ninth Circuit applies a four-part test

5

to motions under Rule 24(a):

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately protected by the parties to the action.

Id. (quoting Sierra Club v. EPA, 995 F.2d 1478, 1481 (9th Cir. 1993)) (citation omitted).

The Ninth Circuit interprets Rule 24(a) broadly in favor of intervention. Id. In evaluating a motion to intervene under Rule 24(a), a district court is required "to take all well-pleaded, nonconclusory allegations in the motion . . . as true absent sham, frivolity or other objections." Southwest Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 820 (9th Cir. 2001).

A court may also at its discretion permit intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2). In exercising its discretion, a court is to "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Id.

## DISCUSSION

I.  Intervention as of Right Under Rule 24(a)(2)

Proposed Intervenors acknowledge that the Ninth Circuit generally has held that intervention as of right at the liability phase of a NEPA action is not allowed. But, Proposed Intervenors argue that this case distinguishes itself because the court has not considered intervention where a federal agency and a local agency prepare and rely on a joint environmental review document. PCL

6

responds that the Ninth Circuit's holdings admit of no such exception. The Bureau agrees that Proposed Intervenors are not permitted to intervene as of right at the liability phase.

"As a general rule, 'the federal government is the only proper defendant in an action to compel compliance with NEPA.'" Wetlands Action Network v. United States Army Corps of Eng'rs, 222 F.3d 1105, 1114 (9th Cir. 2000) (quoting Churchill County v. Babbitt, 150 F.3d 1072, 1082, as amended by 158 F.3d 491 (9th Cir. 1998)). The rationale for this rule is that "because NEPA requires action only by the government, only the government can be liable under NEPA." Churchill County, 150 F.3d at 1082. "Because a private party cannot violate NEPA, it cannot be a defendant in a NEPA compliance action." Wetlands Action Network, 222 F.3d at 1114 (citing Churchill County, 150 F.3d at 1082). The Ninth Circuit permits an exception to this general rule at the remedial phase of the case where the contractual rights of the non-federal party may be affected by the proposed remedy. Forest Conservation Council v. United States Forest Serv., 66 F.3d 1489, 1495-99 (9th Cir. 1995).

The Authority was involved in the preparation, circulation and public comment stages of the Intertie EA/IS. Relying on this fact, Proposed Intervenors contend that the general rule against intervention for non-federal parties in a NEPA compliance action does not apply in this case because the Authority has a significantly protectable interest in the adequacy of the Intertie EA/IS it jointly prepared with the Bureau.

The fact that the Authority assisted the Bureau with its statutory requirements, however, does not create a significantly

7

1  protectable interest.  Although NEPA regulations encourage
2  cooperation between federal and local agencies in conducting
3  research, preparing assessments and complying with other State and
4  local laws, see 40 C.F.R. §§ 1502.5(b) and 1502.6, the NEPA and its
5  regulations ultimately hold federal agencies responsible for
6  complying with these provisions "to the fullest extent possible."
7  40 C.F.R. § 1502.6(b),(c).  They do not prescribe or regulate the
8  Authority's involvement.  The Authority cannot violate the NEPA
9  and, therefore, it is not a "proper defendant in an action to
10 compel compliance with NEPA."  Churchill County, 150 F.3d at 1082.
11     Proposed Intervenors also claim intervention as of right is
12 warranted because the case challenges the same environmental review
13 documents the Authority relied upon for its CEQA compliance.  They
14 contend that an injunction against the Bureau would have the same
15 preclusive effect on the Authority, preventing it from moving
16 forward with construction of the Project.  In addition, if further
17 environmental review is ordered, the Authority will have to assist
18 the Bureau with such a review.  Thus, Proposed Intervenors argue
19 that the Authority's legally protected interest in the finality of
20 its CEQA compliance is threatened by the present suit.
21     The Ninth Circuit has not had an occasion to rule in a case
22 presenting this situation; however, the court's holdings are clear
23 that private parties, even those with interests in the outcome of
24 the litigation, may not intervene as of right in NEPA compliance
25 actions against the federal government, except at the remedial
26 phase.  Because the Court grants permissive intervention to
27 Proposed Intervenors at the remedial phase, it is unnecessary to

8

decide whether intervention as of right should be granted at the remedial phase.

Therefore, Proposed Intervenors' motion to intervene as of right is denied.

## II. Permissive Intervention Under Rule 24(b)

Proposed Intervenors contend that permissive intervention should be granted because their defenses raise common questions of law and fact and intervention would not unduly delay or prejudice the rights of the original parties. PCL counters that Proposed Intervenors are not entitled to permissive intervention because the Bureau adequately represents their interests. Furthermore, PCL asserts that Proposed Intervenors cannot present any new questions and that intervention would burden the parties by delaying the proceedings. At the hearing, the Bureau opposed permissive intervention in this case.

"Unlike Rule 24(a), a 'significant protectable interest' is not required by Rule 24(b) for intervention; all that is necessary for permissive intervention is that intervenor's 'claim or defense and the main action have a question of law or fact in common.'" Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094, 1108 (9th Cir. 2002) (quoting Fed. R. Civ. P. 24(b)). Rule 24(b) "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." SEC v. U.S. Realty & Improvement Co., 310 U.S. 434, 459 (1940). Proposed Intervenors seek to defend against PCL's NEPA non-compliance claim by asserting the adequacy of the Intertie EA/IS. Thus, Proposed Intervenors raise common questions of law

9

and fact at issue in this case.

When exercising its discretion to grant permissive intervention, a court must also consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  Fed. R. Civ. P. 24(b)(2).  PCL claims that intervention would create a burden on the existing parties because there will be additional questions, briefs, arguments and motions. Moreover, PCL observes that Proposed Intervenors have intimated that they will bring a motion for change of venue, further delaying the proceedings.  Proposed Intervenors' Answer ¶ 9.  Proposed Intervenors respond that they will not add any new affirmative claims nor unduly delay the proceedings.

"Rule 24 traditionally receives liberal construction in favor of applicants for intervention," in which courts "are guided primarily by practical and equitable considerations."  Arakai v. Cayetano, 324 F.3d 1078, 1083 (9th Cir. 2003) (citing Donnelly v. Glickman, 159 F.3d 405, 409 (9th Cir. 1998)).  Accordingly, where the Court can dispose of lawsuits by involving as many interests as compatible with practical considerations of judicial efficiency and equitable considerations of fairness to a party with defenses of common law and fact, permissive intervention is favored.  See Greene v. United States, 996 F.2d 973, 979 (9th Cir. 1993); Portland Audubon Soc'y v. Hodel, 866 F.2d 302, 308 (9th Cir. 1989). Because the case is in the early stages of proceedings, intervention would not necessarily delay or prejudice the parties. Moreover, Proposed Intervenors' economic interests will be harmed by any delay, providing further incentive for timely adjudication.

10

Therefore, permissive intervention in this case would not unduly delay or prejudice PCL or the Bureau.

Even if Proposed Intervenors satisfy the necessary prerequisites for permissive intervention, intervention should be denied where their interests are adequately represented by the Bureau. Rodriquez v. Ridge, 290 F. Supp. 2d 1153, 1157 (C.D. Cal. 2003) (citing People of the State of California v. Tahoe Reg'l Planning Agency, 792 F.2d 775, 779 (9th Cir. 1986)). To determine whether the Bureau adequately represents Proposed Intervenors, the Court considers:

> (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments;
> (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect.

Northwest Forest Res. Council v. Glickman, 82 F.3d 825, 838 (9th Cir. 1996) (citations omitted). "The prospective intervenor bears the burden of demonstrating that existing parties do not adequately represent its interests." United States v. City of Los Angeles, 288 F.3d 391, 398 (9th Cir. 2002). However, the burden of showing that representation "may be" inadequate is "minimal." Arakai, 324 F.3d at 1086 (quoting Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972)).

With regard to the third criteria for adequate representation, the Authority was involved intimately in preparing the Intertie EA/IS, which is the target of PCL's claims that the Bureau has not sufficiently satisfied the NEPA's legal requirements. Thus, the Authority argues that its participation could offer a more complete

11

record of the joint environmental review.  However, its intervention is not necessary to accomplish this result. Accordingly, the Bureau will adequately represent the Proposed Intervenors' interests at the liability phase.  The Proposed Intervenors may not intervene at the liability phase, but may participate as amici.

However, Proposed Intervenors, particularly the Authority, as a direct beneficiary of the Intertie Project and as joint author of the environmental review, may bring an element at the remedial phase of the case that existing parties would neglect, especially with regards to assessments of alternative projects or settlement discussions.

Although they share the objective of defeating PCL's claims, Proposed Intervenors and the Bureau do not share identical interests.  See Southwest Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 823 (9th Cir. 2001) (sharing of ultimate objective creates a presumption of adequate representation that is rebutted where applicant and defendant do not have sufficiently congruent interests).  The Authority is focused primarily on its contractual obligations to restore pumping capacity and use of the canal and water supply.  Significantly, the Authority and its member agencies will bear most of the costs of the Intertie Project and are directly harmed by delays or diminishment of the water supply provided by the Project.  Furthermore, the Bureau has broader

12

interests in the CVP than the Authority.[1]  The Bureau is charged with presenting the public interest in the Project, not the Authority's economic concerns.  Courts have found that where intervenors have narrower, parochial interests, the government may not adequately represent those interests.  See Forest Conservation Council, 66 F.3d at 1499; Berg, 268 F.3d at 823.  Because their interests diverge, it cannot be said that the Bureau will undoubtedly make all of Proposed Intervenors' arguments at the remedial phase.  Thus, the first and second criteria for determining inadequate representation are also satisfied.

PCL argues that, because Proposed Intervenors will not raise any new questions, they deserve, at best, amicus status.  But, Proposed Intervenors correctly note that amicus status does not sufficiently protect their interests because amici cannot raise issues or arguments not raised by the parties, and cannot appeal. City of Los Angeles, 288 F.3d at 400 (citing Forest Conservation Council, 66 F.3d at 1498).

Therefore, the Court finds that Proposed Intervenors have met their minimal burden of showing that the Bureau may not adequately represent their interests at the remedial phase.

Therefore, the Court grants Proposed Intervenors permissive intervention at the remedial phase.

---

[1] The original purposes of the CVP included navigation, flood control, the storage and delivery of water for irrigation and generation of hydropower.  The Rivers and Harbors Act of 1937, § 2, 50 Stat. 850.  In 1992, these purposes were amended to add "domestic uses, and fish and wildlife mitigation, protection and restoration purposes."  Central Valley Project Improvement Act, Pub.L.No. 105-575, title 34, § 3402, 106 Stat. 4706, 4714 (1992).

CONCLUSION

For the foregoing reasons, the Court grants Proposed Intervenors permissive intervention at the remedial phase and amicus status at the liability phase of this case.

IT IS SO ORDERED.

Dated:  1/3/06

CLAUDIA WILKEN
United States District Judge